UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WALTER E. HARRIS

    Plaintiff,

v.

    Case No. 1:07-CV-514
    HON. GORDON J. QUIST

KAYDON CORPORATION
and LODGE 2597 INTERNATIONAL
ASSOCIATION OF MACHINISTS
AND AEROSPACE WORKERS,

    Defendants.
_____/

## OPINION

Plaintiff, Walter E. Harris ("Harris"), filed a complaint in Muskegon County Circuit Court against Defendants, Kaydon Corporation ("Kaydon") and Lodge 2597 International Association of Machinists and Aerospace Workers ("IAM"), on May 2, 2007, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*; disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*; wrongful termination and wrongful discharge; discrimination in violation of the Michigan Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq.*; discrimination by his union, IAM; and inability to obtain employment records. Kaydon removed the case to this Court on May 29, 2007, alleging federal question jurisdiction. The Court has before it Defendants' motions for summary judgment and Kaydon's motion for Rule 11 sanctions. Harris has failed to respond to both motions. For the

following reasons, the Court will grant the motions for summary judgment and Kaydon's motion for sanctions.

## Summary Judgment

As noted above, Harris has failed to respond to the motions within the time prescribed by W.D. Mich. LCivR 7.2(c).[1]  The Sixth Circuit has held that under these circumstances,

> a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded.  The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden.

*Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (noting that where the nonmoving party has not responded, a court's reliance on facts advanced by the movant is proper and sufficient).  Having reviewed the motions, briefs, and supporting materials, the Court concludes that Kaydon and IAM have met their burden of demonstrating their entitlement to summary judgment.

Plaintiff began employment with Kaydon in April 1973.  Plaintiff was a member of IAM, and his employment with Kaydon was governed by the terms of a collective bargaining agreement containing an Attendance Control Program.  This program authorizes Kaydon to suspend any employee who accumulates 5 points (absences), and to discharge any employee who accumulates 6 points.  In October 2003, Harris accumulated his fifth point when he missed work and failed to call.  Harris contends that he did call but that a Kaydon representative refused to accept the call.  Harris filed a grievance through IAM to protest his suspension, but the grievance was dropped on December 11, 2003.

---

[1] Harris attempted to file a response with the Court that merely denied Defendants' conclusions but failed to offer any reasoning or evidence rebutting Defendants' arguments.  Because the response was not electronically filed despite repeated instructions from the Court, the Court rejected the response.  Harris has not filed a subsequent response.

On February 5, 2004, Harris again failed to report to work or call before the start of his shift. On February 11, 2004, Kaydon discharged Harris. Believing that Kaydon was discriminating against him, Harris filed a grievance with IAM contesting the validity of his discharge. On May 4, 2004, Harris returned to Kaydon to retrieve his personal tools. While there, Harris' union representative told Harris that there was nothing they could do to get his job back. From this, Harris concluded that IAM was dropping his grievance.

On December 22, 2004, Harris contacted the Michigan Department of Civil Rights and alleged that he was terminated because of his disability (back impairment). The MDCR informed Harris that it could not process his complaint because he failed to file the complaint within 180 days of his discharge. The MDCR further informed Harris that the Equal Employment Opportunity Commission ("EEOC") could only process complaints of discrimination if the discriminatory act occurred within 300 days of his contact with the department. Finally, the MDCR informed Harris that he had up to three years from the date of the discriminatory act to file a lawsuit. On December 18, 2006, Harris filed a similar complaint with the EEOC. Harris filed this suit on May 2, 2007.

*A. Title VII*

In Count I of his complaint, Harris alleges that he was discriminated against based on his race in violation of Title VII. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . ." 42 U.S.C. § 2000e-2(a)(1). However, "[a]n individual wishing to challenge an employment practice under this provision must first file a charge with the EEOC." *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, __ U.S. __, 127 S.Ct. 2162, 2166 (2007). This "charge must be filed within a specified period (either 180 or 300 days, depending on the State) after the alleged unlawful

3

employment practice occurred and if the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court." *Id.* (Internal quotations and citations omitted).

The latest discriminatory act that Harris complains of is his termination on February 11, 2004. Therefore, to state a claim under Title VII based on his termination, Harris must have filed a charge with the EEOC within 300 days, at the latest, of his termination. Harris did not contact the EEOC until December 18, 2006 – well over 300 days. For that reason, Harris' Title VII claim is time-barred.

### B. ADEA

In Count II of his complaint, Harris alleges that he suffered age discrimination in violation of the Age Discrimination in Employment Act. Similar to Title VII, Harris cannot sue under the ADEA unless he filed a charge with the EEOC within 300 days of the alleged discriminatory act. *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). Because Harris did not contact the EEOC until almost three years after his suspension and termination, his ADEA claim is time-barred.

### C. ADA

In Count III of his complaint, Harris alleges that he was discriminated against on the basis of his disability in violation of the American with Disabilities Act. As with Title VII and ADEA claims, "a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Again, Harris did not contact the EEOC within 300 days of his termination. Therefore, Harris' ADA claim is time-barred.

### D. Wrongful Termination, Discharge, and Union Discrimination

Harris alleges in Counts IV and V a claim for wrongful termination based upon his assertion that he was terminated "for virtually no reason at all" and "without any reasonable explanation."

(Compl. ¶¶ 17, 21.) In Count VII of his complaint, Harris alleges that he was discriminated against by his union, IAM.  Harris appears to be asserting a hybrid § 301/fair representation claim against Kaydon and IAM.   In essence, Harris is asserting that Kaydon terminated him in violation of the collective bargaining agreement and that IAM discriminated against him by not pursuing his grievance.  To succeed on such a claim, Harris must show that Kaydon breached the collective bargaining agreement and that IAM breached its duty of fair representation.

However, Harris's claim is governed by a six-month statute of limitations.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2295 (1983).  The limitations period begins to run once his claims against Kaydon and IAM accrued, which is when he discovered, "or should have discovered, with the exercise of due diligence, acts giving rise to the cause of action." *Martin v. Lake County Sewer Co., Inc.*, 269 F.3d 673, 678-679 (6th Cir. 2001).  At the latest, Harris discovered the acts giving rise to his cause of action on May 4, 2004, when an IAM representative told Harris that they were no longer pursuing his grievance and that there was nothing more they could do for him.  Because Harris failed to file his claim within six months of discovering that IAM was no longer pursuing his grievance, Harris' hybrid § 301/fair representation claim is time-barred.

### E.  Elliot Larsen Civil Rights Act

In Count VI of his complaint, Harris alleges that Kaydon discriminated against him in violation of Michigan's Elliot Larsen Civil Rights Act.  However, "[a]n employment discrimination action brought under ELCRA must be brought within three years after the cause of action accrued." *Nichols v. Grand Trunk W. R.R., Inc.*, No. 204901, 1999 WL 33326910, at *1 (Mich. App. Dec. 21, 1999).  "A claim of discriminatory discharge accrues on the date the plaintiff is discharged." *Id.* Since Harris was discharged on February 11, 2004, he had to bring his ELCRA claim by February 11, 2007.  Because he did not file suit until May 2, 2007, his claim is time-barred.

5

*F. Employment Record*

In Count VIII of his complaint, Harris alleges that he has had difficulty obtaining his employment records, and he requests that his records be produced. The right to employment records in Michigan is governed by the Bullard-Plawecki Employee Right to Know Act, M.C.L. § 423.501, *et seq*. The Act provides that an employer, upon an employee's written request, shall provide the employee with the opportunity to review his personnel file. M.C.L. § 423.503. Harris' claim fails because he does not allege – nor put forward any evidence demonstrating – that he made a written request for his personnel files and that Kaydon failed to honor any such request. For that reason, the Court will grant summary judgment in Kaydon's favor on Harris' Bullard-Plawecki claim.

**Motion for Rule 11 Sanctions**

Kaydon has also moved for sanctions pursuant to Fed. R. Civ. P. 11 (c), alleging that Harris' claims and allegations are frivolous within the meaning of Rule 11. Kaydon's motion for sanctions was served on Harris' counsel on August 22, 2007. The motion was not filed with the Court until November 9, 2007, allowing Harris' counsel at least 21 days to withdraw or correct the complaint. Accordingly, the Court finds that Kaydon has complied with all procedural requirements in filing its motion.

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, an individual who files a pleading or other paper with a court certifies that:

> **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> **(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> **(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

6

Fed. R. Civ. P. 11(b)(1) - (4).  Upon finding that Rule 11 has been violated, "the court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated" the rule. Fed. R. Civ. P. 11(c).  What constitutes an appropriate sanction is a matter committed to the discretion of the district court.  *See Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 376 (6th Cir. 1996).  The range of sanctions includes

> directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Civ. P. 11(c)(2).  However, the sanction may not exceed "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  *Id.*

In the Sixth Circuit, the test for determining whether a party has violated Rule 11 is whether the individual's conduct was reasonable under the circumstances.  *See Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997).  The standard is an objective one.  *See Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989).  "Thus, an attorney's good faith is not a defense."  *Id.*  The attorney's conduct is to be judged at the time the pleading or paper was signed rather than on the basis of hindsight.  *See INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987).

Having reviewed Kaydon's supporting documents for its summary judgment and Rule 11 motions, the Court agrees with Kaydon that Harris' claims are frivolous and unreasonable.  Because it was readily apparent that Harris' claims were frivolous, the Court can only conclude that the claims were brought for an improper purpose.  Harris' and his counsel's failure to respond properly to the instant motions for summary judgment and for Rule 11 sanctions is tantamount to an admission that there was never any legal or factual basis to support the asserted claims.  Accordingly, the Court concludes that Harris violated Rule 11 and that an award of attorney fees against Harris

7

and his counsel, jointly and severally, is an appropriate sanction. Because counsel for Kaydon has not submitted an affidavit or a statement of fees setting forth the hourly rate or a description of the work and time spent in this matter, the Court has no basis at this point for determining an appropriate amount of sanctions. Therefore, the Court will direct Kaydon's counsel to submit and serve an affidavit or verified statement of fees and services.

## Conclusion

For the reasons set forth above, the Court will grant Defendants' motions for summary judgment and Kaydon's motion for Rule 11 sanctions.

An Order consistent with this Opinion will be entered.

Dated: January 2, 2008                            /s/ Gordon J. Quist                
                                                            GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE